Our next case for argument is number 222239, United States of America v. Angelo Johnson. Hello, Mr. Hardwick. Hello, Judge Robner. Good morning, and may it please the court. Mr. Hardwick, I am going to do something so horrible to you, but I'm going to start right off. May I? I mean, I'm sorry, because here's the situation. In preparing for today, I went back, and I looked at the Supreme Court's decision in Duenas-Alvarez. And I also looked at the briefing and the argument in that case, and I saw that the government did express a concern to the court there about what the consequences would be of finding that a state's aiding and with generic aiding and abetting liability. And in particular, would that mean that no conviction in that state can ever qualify as a predicate crime of violence? But the court didn't address that concern in its opinion, nor did it tell us, sadly, exactly how to incorporate principle versus accomplice liability, which is not an element of the offense, into the Taylor categorical analysis, which focuses only on elements rather than the means of committing an offense. And my question is so long that if you need extra time, you're going to get it. So what I want to ask you is this. If we are going to make one status as an aider and abetter versus a principle part of the categorical analysis, and if we conclude, as you have urged us to do in your briefs, that the common design theory makes Illinois aiding and a better liability overbroad, then why should we not employ a modified categorical approach? Look at the Sheppard documents to figure out whether a particular defendant truly might have been convicted as an aider and abetter rather than a principle. And I realize, I really do, that the modified categorical approach is typically triggered only when state law sets forth alternate elements of an offense. But if we're going to revise the categorical inquiry to adopt the modified categorical approach as well, and that is the only way that I personally have been able to think of to avoid disqualifying all Illinois convictions as predicates, which is an outcome I really can't imagine that Congress or the Sentencing Commission would have wanted. So, Your Honor, there's a lot in your question. Let me start with it. Let me start with the short answer, which is the reason you can't apply the modified categorical approach is Mathis. And in Mathis, the Supreme Court is as clear as they could be. The modified categorical approach only applies when you're dealing with elements. And Illinois state law says whether it's common design or whether it's liability as a principle is not an element. It's not something that has to be put in the indictment. It's not something that the jury has to agree on unanimously. And so, I guess, and Mathis lays this out, that means the modified categorical approach can't apply because you don't know what the jury actually found, whether they found liability as a principle or whether they found liability under a common design theory. I think along those same lines, in a case where there is a latent factual disagreement about whether the defendant was liable under common design or liable as a principle, there's no incentive to raise that issue before the jury because it just doesn't make a difference. And so, that's why the Supreme Court has always said we only get into the Shepard documents when there's some incentive for the defendant to make it clear which way it actually happened. And here, when we're talking about principle and common design, there just isn't any incentive to contest that. And so, this is clearly a means situation, the situation the Supreme Court discussed in Mathis, where they say it's not an appropriate occasion to apply the modified categorical approach. I think... Now, if you don't think we can apply that approach, can you tell us some other way in which we can separate cases in which the defendant jury might have been convicted as an aid or in a better from cases where he could only have been Your Honor, I don't think Illinois law gives the court the tools to be able to separate it out in that way. And like I said, in cases where defendants have said, well, the jury didn't tell us whether this person committed murder, for instance, as a principle or only under common design, Illinois courts have said, that's true, we can't figure it out, but we're not interested in that solution. As long as they found you liable under some theory, that's a unanimous verdict, and that's enough to find you guilty. I think to get to the other part of your question, Judge Robner, about Duenas-Alvarez and the government raising, I think, the concern that Your Honor is raising, which is, if that's right, then there may be entire states, if the state doesn't have to prove the use or attempted use or threatened use of force, that may take an entire state's law outside of conformity with what the categorical approach requires. If the Supreme Court had, the Supreme Court could have said what the government is urging you to do now, which is, we never look to an aiding and abetting theory, we just rule it out entirely for purposes of the categorical approach. That's not what they say. What they say instead is, we're going to draw a line between generic aiding and abetting and between special aiding and abetting, and we're going to make you look to the specifics of the state law to decide whether overbreadth actually exists in the way they apply their vicarious liability doctrines. And so I, you know, to the extent that leads to uncomfortable conclusions, those conclusions are very clearly mandated by Supreme Court precedent. Uncomfortable is putting it mildly. Yeah, but I just have one more follow-up. If we were to employ a modified categorical approach in this case, what would the outcome be? In other words, is there any reason to think that your client actually might have been convicted as an aider and abetter? Your Honor, the short answer is that there are some reasons to think that. The trial record indicates that Mr. Johnson was not the only person engaged in the commission of his prior Illinois offense. I don't think the record or the Sheppard documents reveal very clearly whether or not he was ultimately convicted as a principal or under a common design theory, because there were multiple people involved. To address, again, the point that Your Honor has raised, I think at this point it's no longer a surprise that the categorical approach leads to awkward or, you know, outcomes that people are not happy with. And certainly, there have been dissenting Supreme Court opinions calling it Alice in Wonderland, calling it absurd. The other thing that's going on here is we're talking about advisory guidelines, right? That's right, Your Honor. So why on earth should the hypothetical possibility that Mr. Johnson was merely an aider and abetter who agreed only to some minimal common design, why should that drive the sentence here? Well, Your Honor, the short answer is it is always going to be a backstop that allows the district court to impose a sentence that's reasonable under the circumstances. And this court's precedent, of course, says that district courts need to calculate the sentencing guidelines correctly. That's why it matters, and that's why there was error below. But I think to the extent the court is worried about the outcome of ruling for us on the common design theory, the ultimate conclusion is going to be that the district court judges always have the power to make sure that the sentence they're imposing fits the offender and fits the reality of his history. And as long as we're under the guidelines, that works, but not if we're under the Armed Career Criminal Act. That's right, Your Honor. And the Sentencing Commission has now told us we're waiting for congressional action, right, but that aiding and abetting counts, right? Your Honor, the Sentencing Commission does have an amendment that states that aiding and abetting offenses do qualify. It has a proposed amendment waiting for congressional action, right, that moves that into the guidelines. That's right, Your Honor. That's right. I guess what I would say is even under that amendment, there becomes a question of whether Illinois' common design doctrine qualifies as aiding and abetting. And under the Supreme Court's case law, that requires the specific, or I'm sorry, the special aiding and abetting versus generic aiding and abetting analysis. If there's no more questions on the common design argument, I do want to turn to a separate argument in our appeal, which is about what qualifies under the natural meaning of the term controlled substance. So in United States v. Ruth, where this court adopted the natural meaning approach to controlled substance offenses, the court said that a controlled substance is generally understood to be any of a category of behavior-altering or addictive drugs, as heroin or cocaine, whose possession and use are restricted by law. But about a year after the court decided Ruth, there was a separate case, United States v. Wallace, which has, I think, created some confusion because Wallace says we didn't have to use that dictionary definition in Ruth. There are other ways of saying the natural meaning of the phrase. But what Wallace doesn't do is give an alternate definition that lower courts and litigants can look to to decide whether any given chemical or any given molecule falls within the natural meaning of the term controlled substance. And the reason that matters is because states have a whole host of laws, not just controlled substances laws, but environmental laws banning certain pollutants, laws regulating the use of explosives or radioactive chemicals, laws dealing with food contaminants, or laws dealing with invasive plants or invasive species. And all of these laws regulate fairly esoteric chemicals or molecules. And just looking to the chemical name or the chemical formula doesn't tell you whether any of those substances fall within the natural meaning of the term controlled substance. I don't think I even know how to pronounce this, but I'm going to try it anyway. Do we have any evidence or knowledge or indication that Michigan has been prosecuting anyone for 1, 2, 3, I, Ioflupane as a variant of cocaine or is prosecuting possession or distribution of conformational stereoisomers? Judge, you're saying Ioflupane the same way I would, which there's no assurance that it's right. To answer your question, I'm not aware of any prosecutions for those specific substances. But in Ruth itself, this court said that we're not going to make determinations about what the supposed realities of the drug trade are. If it's a chemical that exists, and I think here there's no dispute that Ioflupane exists, and it falls within Michigan's definition of cocaine, if Ioflupane is not naturally understood to be a controlled substance, then that creates a problem for treating Mr. Johnson's predicate conviction as a controlled decision in Wilkes, rejecting the purported mismatch between federal, federal and Michigan law as to the cocaine stereoisomers. So, your honor, I think there's two parts to the Wilkes decision. The first is, is they hold the Ioflupane issue for, because the Supreme Court is going to be addressing a timing question, which, which doesn't exist in this case. But, but I think the that from 2015 onwards, Michigan doesn't, I'm sorry, Michigan does criminalize Ioflupane, while federal law does not. So I think Wilkes supports our argument that there is overbreath here. As to the stereoisomers point, I, I think Wilkes reaches the conclusion about stereoisomers on the basis of an extensive factual record that's developed in the district court, where there's the government forfeited those arguments before the district court. So you just don't have the, the kind of record that you would need to be able to say as a scientific matter, you know, are these stereoisomers, uh, geometric isomers? And I think that's another reason to send this back down with some guidance on how the district court should do the analysis as what falls within this natural meaning of controlled substance. And if there's no further questions, I'll reserve the remainder of my time for rebuttal. Okay. And I'm going to, I'm going to give you more time because my question took up half of your time. Thank you. All right. Um, huh. Miss Alex. Okay. Good morning, Judge. May it please the court, Georgia Alex Ike is representing the United States. This court should affirm the defendant's sentence. I want to start with Judge Rovner's question regarding the modified categorical approach. I don't think it's necessary for the court to reach that issue. And the reason why it's not necessary for the court to consider whether there is some means by which the modified categorical approach could be deployed here is because we know that there's no legal distinction at the end of the day between principles and aiders and abettors of an offense. So even assuming that the defendant was convicted pursuant to Illinois' separate statute codifying the common design theory, that doesn't bear on categorical approach. Jurisdictions, both federal and state have abrogated that distinction. We know this from Duenas-Alvarez. We know this from Hill, a Seventh Circuit case dealing with the Illinois felony murder doctrine. We know this from Orvin, which was in the federal context. And most recently we know this from Gammas as well, which dealt with the same argument being raised here just with respect to Indiana's aiding and abetting or accomplice theory of liability. And Gammas squarely said that aiding and abetting a crime of violence under Indiana state law is still a crime of violence, and then went on even further to say that the court could end its analysis at that juncture, that there was no reason to go any further. Defendant here obviously urges the court to go further, but in doing so ignores some of the distinctions in cases like Duenas-Alvarez where the court did consider, did go on to consider, whether or not a generic or a state's aiding and abetting theory of liability was more special than or different in some appreciable way than the generic definition of aiding and abetting. But in several of those cases, in Duenas-Alvarez and in Gammas as well, the aiding and abetting theory was reflected in fact in the statute of conviction. And so it made sense in those cases, as well as in Yackel, Coates, and Bowie, these out-of-circuit cases the defendant has relied on in his brief, for the court to consider whether the aiding and abetting theory played any role in a categorical approach. Here we don't have that. The offensive conviction for Mr. Johnson is squarely Illinois robbery and Illinois kidnapping with no reference to Illinois' accomplice theory of liability, this common design theory. And so in light of cases like Gammas building on Worthen Hill and Duenas-Alvarez, there's no reason for the court to consider whether or not the defendant was in fact actually convicted under Illinois' common design doctrine. Again, because this distinction between principles and aiders of an offense has been abrogated. And similarly, I don't think that there's much significance that can be drawn from Duenas-Alvarez's silence in response to the concern that, as just Rovner pointed out, the government had cited in its briefs in Duenas-Alvarez about the slippery slope argument. That if you find that aiding and abetting influences the categorical approach, we could end up in a world in which nothing is a crime of violence. Duenas-Alvarez does not comment on that. I don't know that there's a lot of significance that can be placed on silence. And I will also point out that, again, in Gammas, this court just a few weeks ago did squarely address that concern. And it said that this result that the defendant was criminal law treats principles and aiders and abetters alike, and that it would lead to an untenable result where nothing would be a categorical match. And Gammas held that that simply cannot be what legislators had in mind. When we're talking about Illinois, there are really two statutes at issue, right? There's the common design statute and a specific intent statute. All of our discussion, unless I'm wrong, all of our discussion is on the common design portion. Is that correct? Yes, Judge. That's my understanding. And any opinion that we would draft coming out of this case would have to be limited to just that statute. Is that correct? And that's my understanding of the defendant's challenge, that it's specifically the common design doctrine that creates this overbreath issue. Now, the common design doctrine, as I understand it, is one of two ways that a state prosecutor could prove culpability under an aiding and abetting theory. But I think, I guess narrowly, the court could only reach this common design issue. But for consistency's purposes with respect to Gammas and Worthen, I think the general principle that this court has already signed on to is this idea that there is no distinction at all between principles and aiders and abetters, regardless of what the particulars of an aiding and abetting theory might be. Thank you. When we're looking at whether a state offense qualifies as a crime of violence, do you think it matters whether we're doing so for purposes of an enumerated defense? I think offense is an elements clause or a forced clause. I mean, our decision in Lomax, for example, distinguished Taylor's holding as to attempted Hobbs Act robbery on that basis. I'm just wondering why and how, if at all, you think this factors into the categorical analysis. I don't think that Taylor factors into the categorical analysis with respect to the common design doctrine. I think Taylor was about attempt offenses, not accomplice liability theories. I think Worthen makes that clear and says that Taylor doesn't reach accomplice liability theories. I think Lomax makes it clear that Taylor doesn't affect the elements clause. I think what we're really talking about here is the impact of the Illinois common design doctrine on a determination that a predicate offense qualifies under the enumerated offense clause for that reason. And I think it's worth pointing out that Duenas-Alvarez and every other case cited by either of the parties is only focused on the enumerated offense clause, not the elements clause. And here I don't think there's actually a dispute that Illinois robbery and Illinois kidnapping both constitute crimes of violence under the elements clause. And so I think your question, Judge Rovner, goes to a critical point, which is you can even set aside the entire issue as to whether or not Illinois robbery and Illinois kidnapping qualify under the enumerated offense clause as a result of the Illinois common design doctrine because this court has held that both offenses constitute crimes of violence under the force clause and nothing about Taylor impacts that. Unless there are any additional questions on the common design doctrine, I do want to move to the defendant's argument regarding his conviction under Michigan's cocaine, Michigan's narcotics narcotics statute related to cocaine. As I understand it, defendant is conceding that under Ruth, his narcotics conviction qualifies as a controlled substance offense under the guidelines. And what instead he's asking this court to do is to revisit the natural meaning standard that was set forth in Ruth. This was an invitation that this court expressly declined in Wallace. And in doing so, I disagree with defendant when he when he characterizes Wallace as creating confusion. In fact, the government reads Wallace as rather than creating confusion to in fact reaffirm the natural meaning standard to reaffirm Ruth's underlying deference that it urged courts to or instructed courts to take with respect to state laws definition of controlled substance offenses, at least for purposes of the guidelines. And Wallace specifically... And Justin, I mean, what about Wilkes? I mean, doesn't that, you know, pretty much decide on a developed record, you know, including expert testimony? Sure. Yes, Judge. I mean, well, a couple of comments on Wilkes is that, you know, the government relies on Wilkes in the alternative in a world in which this in fact, you know, Ruth and Wallace don't mean what they say that they mean, which is that, you know, we turn to state law offenses to define controlled substance offenses. And in fact, we do expect for guidelines purposes, the parties and the courts to engage in this kind of intense categorical overbreath analysis. In that world, then the government relies on Wilkes to say, well, that work has been done here. And so I disagree with defendant when he says that the government has forfeited any effort to rely on Wilkes. The government can't forfeit a position that it was never obligated to take or has not forfeited an opportunity to develop a record that this court has never instructed it to develop. And so I do think that Wilkes does that Michigan's definition of cocaine is not overbroad relative to the federal definition of cocaine on the stereoisomers issue. Now, separately, I understand defendant's argument to be, well, Wilkes highlights a different kind of overbreath problem. And I am also not a chemistry savant, so I will continue to use the pronunciation of ioflupane, which I think we've all settled on. And that being a potential source of overbreath here. But one, that's not an argument that the defendant raised in the district court. The overbreath argument in the district court was very much focused just on stereoisomers. And then second, again, regardless of how Wilkes ultimately decides that issue or any other court decides that issue under this circuit's precedent, under Seventh Circuit precedent and Ruth and Wallace, it doesn't matter. Wallace tells us that where state law controls particular isomers, they fit the natural meaning of controlled substance, and this court should not speculate about whether they alter behavior. And so if we take Wallace at his word, and Wallace, again, declined an invitation to revisit this natural meaning standard that was set forth in Ruth, then that tells us everything that we need to know in order to affirm the district court's use of defendant's narcotics-related conviction under Michigan law as a predicate offense for the career offender provision. Unless there are any further questions, I'm sorry, Judge Rovner, I may have interrupted you there. I was actually just clearing my throat, but I am trying to consider whether your response concerning the modified categorical approach is somewhat different from the way you looked at the modified categorical approach in your brief. I think it's a little bit different, because you did, as I recall, a state that implying the modified categorical approach might be one way out of our conundrum. And I had, at that point, been thinking that typically that approach comes into play only when the state offense has alternate elements of proof. But given that one's status as an accomplice or a principal is not considered an element of the offense, I had been wondering what basis we had to invoke the modified categorical approach here. So it's a very convoluted question, and I'm very sorry. No, I understand that this is a convoluted issue, Judge, and I'm looking at the government's brief, the response brief in Angelo Johnson, and in particular at pages 21 and 22. And as I understand the government's position, the point simply was that a court can, if necessary, look to the Shepard document. So in a world where a court has decided that the abrogated distinction between principals and aiders and abettors doesn't carry the day, that the next question then is to really consider, well, what was the person actually, the defendant, actually convicted of? That there are courts that have looked to Shepard documents in order to determine that. Again, the government doesn't think that that's necessary. And part of the government's point here was that we have an odd situation here in which the defendant seems to want to employ the modified categorical approach for his benefit to suggest that the offense was committed in a particular way, but then to bar examination of documents that might actually suggest otherwise. I don't understand their argument that way. I thought they were arguing against the modified categorical approach and trying to say that because you cannot use that, you have to assume he was convicted for the least serious conduct. I think that's one way to look at it. I think the way that I'm looking at it, though, Judge, is to say, is to hear them say, is to hear the defense argument to be that we can assume certain facts. We can assume that the crime was committed a certain way. We can assume that a conviction was secured a certain way, but prohibit an examination of jury instructions and indictment. Well, that's the way the categorical approach works, right? And I think we ask, what is the least serious, least violent way that a person could be convicted under this statute? But the other way the categorical approach works is to limit that examination to the statute of conviction, and that's what Mathis tells us. And so I think they argue, I guess there's tension there, but I don't read Mathis to be telling courts that you can look beyond the statute of conviction, beyond the elements that the one quick question. No, no, please. Is there any sign here from the district judge that these hyper-technical hypotheticals would not have mattered to his sentence under the guidelines? Unfortunately, Judge, I don't think there was. And if there are no further questions, the government would ask the defendant's conviction and sentence be affirmed. Thank you. Would you please give Mr. Hardwick four minutes? Thank you so much, Your Honor. Let me start just by saying Judge Hamilton's characterization of our position is exactly correct. We are not asking for the court to apply the modified categorical approach. Instead, our position is that under the normal categorical approach, you need to assume that Mr. Johnson's crimes were committed in the least violent, least serious way possible. I do also want to address the question that Judge Brennan had about the difference in Illinois law between common design and what they call shared intent. These are two theories of liability set out in the same Illinois statute. They're both set out in 720 ILCS 5-5-2. The specific intent theory in Illinois is far more similar to aiding and abetting as it's understood in every other state and as it's understood under federal law. And so that, frankly, the specific intent is what I would consider to be sort of Illinois' aiding and abetting doctrine. In addition to that, you have common design as an alternate basis for liability under Illinois law. Does it use the word alternate? It doesn't, Your Honor, but it sets them out and the case law indicates that they are alternate theories of liability. That would be the Fernandez case from the Illinois Supreme Court, which says these are two separate things. And common design is that's the outlier. That's what means that Illinois courts do not need to find that the defendant used or attempted to use or threatened to use force. So I think that gets me to the government's assertion that we are only talking about the enumerated defense clause here and not the force clause. That's not correct. We're talking about both. And the reason for that is that the Supreme Court has been very clear that the force clause requires proof of the defendant's use of force. And by, through this common design doctrine, Illinois has eliminated that requirement. And I think that the place to look is the Ninth Circuit's en banc Alfred decision, which we cite on page nine of our reply brief. And there they say, the categorical approach necessarily asks whether the state offense necessarily involves the defendant's commission of acts that categorically match a federal standard, citing the Borden case. A conviction showing that somebody else satisfied the elements of the generic offense does not necessarily mean that the defendant satisfied those same elements. That's the government's, the government repeated again and again that there's no legal distinction between liability as a principle and liability as an aider and abetter. We agree with that, but they're drawing the wrong consequences from that. The fact that there's no distinction means you have to look to see whether liability under Illinois' common design doctrine categorically requires what the force clause sets out and what the enumerated defense clause sets out. And there's no authority, certainly not Duenas Alvarez or any of the other circuit court opinions that the government has cited, that would allow you to dispense with that analysis. Even in Gamaz, the court actually goes through the specifics of Indiana law and reaches the same conclusion we reach in our reply brief, which is that Indiana follows the generic aiding and abetting theory. Mr. Hardwick, if we go to Alfred, that en banc opinion is a long opinion. There's a variety of different voices in it, but doesn't ultimately, if you read that entire opinion together, isn't that probably an eight to three vote along the same lines as our court took in Gamaz? No, Your Honor. The three, I think, is the portion of the court that's endorsing the Gamaz rule. We don't look to aiding and abetting at all. It's the eight, and so it's the control and concurrence plus the dissent, which say, of course, the categorical approach requires you to consider whether aiding and abetting is generic or special, and they're taking that directly from Duenas-Alvarez. I think Alfred, the overwhelming majority of the en banc panel, stands for this position that you have to look at it. That's what all of the other circuits have said, and that's what Duenas-Alvarez says as well, and that's also what Gamaz actually does if you look to how they engage in the analysis. I realize I'm over my time. If I could just make one comment about the controlled substances issue. Just from the name 1, 2, 3, I, Ioflupane, we have no idea whether that's an addictive drug, whether that's some sort of industrial pollutant, whether it's a food additive, what it is. There needs to be some inquiry into what the properties or effects of this drug or of this chemical are to know whether it falls within the natural meaning approach, and so that's what the court should clarify and allow the district court to engage in on ground. Thank you. Thank you. Well, all right. Well, thank you very much, Mr. Hardwick and Ms. Solexiakis, and case will be taken under advisement. Thank you.